UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| DARLENE FLORENCE BAUER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 10-161-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Darlene Bauer ("Bauer" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 6, 7] Bauer contends that the Commissioner erred in finding that she is not disabled. Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

It appears that Bauer is asserting that the Administrative Law Judge ("ALJ") assigned to conduct the administrative hearing did not give adequate weight the opinion of certain treating physicians. However, her memorandum does not contain any specific arguments in support of this assertion. Instead, Bauer's counsel merely outlines the Claimant's alleged medical problems and inserts a summary of the medical records contained in the administrative record.

Bauer's argument is contained at page 2 of her supporting memorandum and consists of three paragraphs. The first and second paragraphs cite *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541 (6th Cir. 2004), and 20 C.F.R. § 404.1527(d)(2) regarding the proper weight to be given to the opinions of treating physicians. In the third paragraph, Bauer's counsel cites two additional cases from the Sixth Circuit regarding the deference given to the opinions of treating physicians. Having reviewed the entire administrative record and decision of the ALJ assigned to the matter, the Court agrees with the Commissioner that the Claimant appears to be arguing that the ALJ erred by discounting the opinions of Dr. Nancy Swikert and Dr. John Kelly in concluding that Bauer was not disabled under the provisions of the Social Security Act. In light of the Claimant's failure to meaningfully articulate any additional issues for review, the undersigned finds such to be waived.

After reviewing the administrative record and having considered the parties' respective arguments, the Court agrees with the position taken by the Commissioner. Accordingly, the Commissioner's motion for summary judgment will be granted and the relief requested by Bauer will be denied.

**I.**

Bauer was injured at work in March 2005 and filed an action to recover workers' compensation benefits. That claim was settled for an undisclosed sum. Medical records and testimony reflect that the injury occurred as Bauer was emptying the contents of a heavy garbage can into a dumpster at the restaurant where she worked. The injury primarily affected her lower back, but Bauer alleges a number of other disabling conditions prevent her from performing work which is available in the regional or national economy.

Bauer filed applications for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act in November 2005. She alleged a disability beginning on the date of her work-related accident (March 22, 2005). Bauer's claims were denied initially and upon reconsideration. Thereafter, an administrative hearing was held by video teleconference before ALJ Roger L. Reynolds on July 16, 2008. [*See* Administrative Record, pp. 424-466; hereafter, "Tr."] Bauer appeared at the hearing along with her attorney, Debbie Feldmann, and a vocational expert ("VE"), Linda Tabor. [Tr., pp. 27-59] In a decision dated September 12, 2008, ALJ Reynolds found that Bauer had a number of physical impairments, but was capable of performing work that exists in the national economy. [Tr., pp. 17-27] As a result of this finding, the ALJ concluded that Bauer was not entitled to DIB or SSI. [Tr., p. 27]

Bauer request for review of the ALJ's decision by the Appeals Council was denied on May 22, 2010. [Tr., pp. 7-10] This action was timely filed following this final administrative determination.

## II.

Bauer was forty-seven years old at the time of the administrative hearing before the ALJ. [Tr., p. 429] She has a high school education and work experience as a quality control inspector through a temporary employment agency, a telemarketer, a cashier, a cook at a nursing home, and a retail store manager. [Tr., pp. 94, 430-33] Bauer claims that she became disabled as of March 22, 2005, due to chronic low back pain, secondary to degenerative disc disease of the lumbar spine; morbid obesity; rotator cuff tendonitis in the right shoulder; migraine headaches;

multiple myalgias; pain disorder; bilateral carpal tunnel syndrome; peptic ulcer disease; asthma; and a history of seizures.

With the exception of the last three items listed, the ALJ found these impairments to be severe. [Tr., p. 20] However, based upon his review of the medical and other evidence presented, he did not find the last three listed complaints to be "severe" under the applicable regulations, either singularly or in combination. According to ALJ Reynolds:

> the claimant has indicated that she has peptic ulcer disease, asthma, and a history of seizures. Medical evidence of record includes references to epigastric and abdominal pain, but does not contain any further treatment or diagnosis for ulcers (Exhibits 8F, 9F, 18F). The claimant has also stated that she has a history of asthma and seizures. While the medical evidence does reflect a prescription for an albuterol inhaler, there is no record of any pulmonary function testing or of any asthma exacerbation. The claimant has stated that she had one grand mal seizure secondary to an asthma attack in 1997. However, an EEG by P. Scott Becker, M.D. in July of 2004 was normal in wake and sleep, and the record contains no documentation, treatment, or medication for seizures (Exhibits 3F, 18F).
>
> In this case, the Administrative Law Judge finds that the medical evidence of record as delineated above does not support medically determinable "severe" impairments related to peptic ulcer disease, asthma or a seizure disorder, which could reasonably be expected to produce the alleged symptoms of which the claimant complains, and accordingly, finds that she has no "severe" impairments based on those allegations. These alleged impairments, alone or in combination, have no more than a minimal effect on the claimant's ability to perform basic work-related activities, and so are "not severe."

[Tr., p. 20] This finding is supported by the Claimant's medical records. And because at least one of Bauer's physicians relied upon the Claimant's assertions of seizures to support her conclusion concerning Bauer's impairments, this finding explains why the ALJ properly discounted that physician's opinion.

After reviewing all medical evidence and considering Bauer's age, education and work experience, the ALJ concluded that the she retained the residual functional capacity ("RFC") to perform light work with several restrictions. More specifically, the ALJ found that Bauer: could lift, carry, push and pull twenty pounds occasionally and ten pounds frequently; sit, stand, or walk six hours each in an eight hour day; could not climb ladders, ropes, or scaffolds; could not balance or be exposed to industrial hazards or concentrated vibrations due to body habitus; could occasionally climb ramps and stairs; could occasional stoop, kneel, crouch or crawl; could occasionally push and pull with her right arm; could not use her right arm for overhead work; required work with repetitive procedures and no frequent changes in work routines; could only occasionally interact with co-workers, supervisors, or the general public; cound not perform rapid or repetitive flexion or extension of the wrists; and could not operate vibrating hand tools. [Tr., p. 21] And in reaching his ultimate conclusion that Bauer was not disabled, the ALJ considered the testimony of the VE concerning jobs in the national and regional economies that Bauer was found capable of performing even in light of her restrictions. [Tr., pp. 26] The VE's opinion is not challenged in this case.

In reaching his decision, the ALJ specifically addressed the nature and effect of the Bauer's impairments on her ability to perform light work, with the restrictions the limitations identified above. Additionally, the ALJ considered Bauer's testimony and found it to be inconsistent and contradictory when compared with other evidence in the record. As a result, the ALJ found that Bauer was not entirely a credible witness. [Tr., p. 24] Further, and as

discussed more fully below, ALJ Reynolds specifically considered all medical reports, including those of Dr. Kelly and Dr. Swikert. [Tr., pp. 22-25]

## III.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). In the present case, the Court's analysis proceeds through all five steps.

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on

medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether she can do past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

### The Opinions of Bauer's Treating Physicians

A treating source's opinion regarding the nature and severity of a claimant's impairments will be given controlling weight, provided it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Rogers*, 486 F.3d at 242 (internal quotation omitted) (alteration in original). If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must give "good reasons" for his decision. *Id.* These reasons must be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

In the present case, the Court finds that the ALJ fully considered the records and opinions of Bauer's treating physicians and explained the weight given to them. Furthermore, the record reflects that the ALJ explained the reasons for discounting the weight given to the opinions of

Dr. Swikert and Dr. Kelly. As the Commissioner correctly notes in his motion for summary judgment [Record No. 7, pp. 7-8], Bauer visited Dr. Swikert's office (Patient's First Physician's Group) four times during the relevant period: (1) March 22, 2005 (the alleged onset date of the Claimant's disability); (2) August 23, 2005; (3) August 27, 2005; and (4) May 23, 2008 (the date Dr. Swikert rendered her opinion). On March 23, 2005, she recommended rest, heat, stretching exercises, and various medications for Bauer's low back pain. [Tr., p. 143] During the August 2005 visits, Bauer's chief complaint was diarrhea. The treatment notes from these visits do not indicate abnormal objective clinical findings. [Tr., pp. 141-142] And on the date of the Claimant's last visit, Dr. Swikert filled-out the paperwork in connection with Bauer's application for social security benefits. At that time, Swikert noted only tenderness in Bauer's neck, shoulders, and spine, and decreased ranges of motion in Bauer's legs, neck and shoulder. [Tr., p. 332] The objective findings during these visits do not support severe impairments outlined in Dr. Swikert's May 23, 2008 report.

Earlier medical records from Patient First Physicians Group reflect subjective complaints of headaches and other complaints. However, Bauer later reported in August 2005 to Paul Lopreato, a physician's assistant at Dr. Kelly's office, that her headaches were severe when they occurred, but were less frequent. [Tr., p. 396]

Dr. Swikert completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities: on May 23, 2008. In this form, Swikert opined that the Claimant could only frequently lift less than two pounds and that she was unable to stand, walk, or sit for any amount of time in an eight-hour day. [Tr., pp. 328-329] Additionally, she concluded that Bauer was

unable to climb, balance, stoop, crouch, kneel, or crawl. [Tr., p. 330] And she found that the Claimant's impairments affected her ability to see, hear, speak, reach, handle, finger, feel, push or pull and restricted her exposure to heights, moving machinery, chemicals, dust, noise, fumes, temperature extremes, humidity, and vibration. [Tr., pp. 330-331] Based on these findings, Dr. Swikert concluded that Bauer was incapable of performing any work activity for eight hours a day, five days a week. [Tr., p. 331] Again, as noted above, Dr. Swikert's observations of the Claimant were limited, and her conclusions are not supported by the objective medical evidence available at the time her report was completed.

Dr. Kelly performed three lumbar epidural steroid injections in May and July of 2005. However, there is no indication that he performed physical examinations in connection with these procedures. Instead, it appears that Bauer was seen by Mr. Lopreato, a physician's assistant. Dr. Kelly also completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" on June 1, 2008. [Tr., pp. 378-81] Notwithstanding his lack of direct contact with Bauer, in this assessment, Dr. Kelly expressed the opinion that the Claimant's work-related activities would be severely limited.[1] Notwithstanding the severity of the limitations noted in his assessment, Dr. Kelly's physical examination indicated that Bauer guarded her left leg due to pain but had normal muscle strength and tone and experienced no atrophy or muscle twitching. Further, Bauer was observed to have a normal, spontaneous gate and was able to walk

---

1  Dr. Kelly found that Bauer could lift and carry less than ten pounds occasionally and zero pounds frequently; stand and walk for ten minutes at a time for a total of one hour during an eight-hour day; and sit and stand for twenty minutes at a time for a total of four hours during an eight-hour day. He also concluded that Bauer could never climb, balance, stoop, crouch, kneel, or crawl; could not push or pull greater that ten pounds and was restricted from exposure to heights, moving machinery, temperature extremes, and vibrations. As a result, Dr. Kelly found that the Claimant could not sustain work activity for eight hours a day, five days a week. [Tr., pp. 378-381]

on her heels and toes. [Tr., p. 296] Mr. Lopreato made similar observations until the last treatment note in May 2008. However, neither Dr. Kelly nor Mr. Lopreato observed muscle spasm in Bauer's lower back. And like Dr. Swikert, Dr. Kelly provided minimal objective medical evidence to support his opinions.[2]

The extent of the limitations and ultimate conclusions of Dr. Swikert and Dr. Kelly were rejected by the ALJ. As ALJ Reynolds explained in his report,

> the undersigned will note here that he has considered Dr. Kelly and Dr. Swikert's opinions that the claimant is disabled. While the claimant has received treatment through Dr. Kelly's office, each treatment note from his office is signed by Mr. Lopreato alone, and there is little indication that Dr. Kelly has personally examined the claimant. In addition, Dr. Swikert's statement cites seizures as one reason why she considers the claimant disabled, although there is no record that the claimant has ever received any diagnosis, treatment, or medication for seizures from any health care practitioner (Exhibits 12F, 20F).
>
> Although Drs. Kelly and Swikert may be considered treating sources, their opinions that the claimant is "disabled" are opinions on an issue that is reserved to the Commissioner and, thus, are never entitled to controlling weight or special significance. In this case, the undersigned finds that Drs. Kelly and Swikert's opinions of disability are not well supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence in the record. Therefore, the undersigned concludes that these physicians' opinions of disability cannot be adopted (20 CFR § 404.1527(e); Social Security Ruling 96-5p).
>
> The Administrative Law Judge's conclusion that the claimant is not disabled is further supported by the opinions of the State Agency medical consultants. As those of non-examining physicians, their opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians and psychologists who also are experts in the evaluation of the medical

---

[2] Dr. Kelly references the results of an April 25, 2005, MRI of Bauer's lumbar spine and evidence of muscle spasm. [Tr., pp. 378-381] The MRI was interpreted by a radiologist as showing a "very subtle shallow subligamentous disc protrusion . . . at the L4-5 level" with a discrete annular tear and a disc bulge at the L5-S1 level. However, the radiologist found no canal stenosis or foraminal or alignment abnormalities. [Tr., p. 125]

issues in disability claims under the Social Security Act (Social Security Ruling 96-6p)

[Tr., p. 25]

The additional evidence considered by the ALJ in reaching his conclusions include the report of a consultative psychological examiner (Dr. Kevin Eggerman), two state agency medical consultants (Dr. Rodney Broome and Dr. David Swan), the report of Dr. Martin Fritzhand (Exhibit 5F), as well as the Claimant's own reports of her activities of daily living. [Tr., pp. 211, 216-217, 328-332, 378-381] And while Bauer references various additional records from Dr. Kelly and Mr. Lopreato in support of Dr. Kelly's opinion, most of these records merely reflect Bauer's own subjective complaints. Standing alone, they do not establish disability. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997); 20 C.F.R. §§ 404.1527(d), 416.927(d).

Dr. Fritzhand examined Bauer in January 2006. During this examination, he found that the Claimant walked normally and was comfortable while seated and while laying on her back. And although Bauer was observed to have slight difficulty bending at the waist, he found no evidence of nerve root damage. Further, while the Claimant's straight leg raising and range of motion in her hips were diminished, there was no evidence of muscle weakness or atrophy. [Tr., pp. 216-217] As a result, Dr. Fritzhand found that Bauer was capable of performing a moderate amount of sitting, standing, walking, bending, kneeling, pushing, pulling, and lifting and carrying heavy objects. And while the state agency consultants restricted Bauer from concentrated exposure to vibrations, both concluded that she was capable of performing medium work, with some limitations. [Tr., pp. 234-235, 237, 305-306, 308]

With respect to the weight given to Bauer's testimony, the ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses – including the claimant. *Bradley v. Sec'y of Health and Human Servs*, 862 F.2d 1224, 1227 (6th Cir. 1988) (*citing Kirk v. Sec'y of Health and Human Servs*, 667 F.2d 524, 538 (6th Cir. 1981)). Therefore, his conclusions regarding credibility should be highly regarded. *Id*. Here, the ALJ provided sufficiently detailed reasons for the determination that Bauer's testimony was not entirely are not credible. [Tr., p. 24] This finding is supported by the record which includes the ALJ's personal observations of Bauer during the administrative hearing. *Tyra v. Secretary of Health and Human Services*, 896 F.2d 1024 (6th Cir. 1990) (recognizing that an ALJ may base decision regarding credibility of claimant on personal observations).

In summary, Bauer has not identified any treating physician's report that was ignored or given improper weight or consideration by the ALJ. Instead, the ALJ fully considered all relevant medical and other evidence in concluding that the Claimant had the residual functional capacity to perform light work, subject to identified limitations. In light of the objective medical evidence in the record, this decision is supported by substantial evidence.

## V.

Bauer suffers from several physical impairments, including some impairments observed by Dr. Kelly and Dr. Swikert. However, the opinions of these doctors are not entitled to controlling weight because they are not adequately supported by objective medical evidence and because they conflict with other substantial evidence in the record. Instead, the Commissioner has correctly concluded that the impairments which are supported by objective medical evidence,

either alone or in combination, are not severe enough to warrant an award of benefits. Viewing the record as a whole, substantial evidence supports the Commissioner's determination that Bauer is not disabled as that term is defined under the Social Security Act. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Darlene Bauer's Motion for Summary Judgment [Record No. 6] is **DENIED**;

(2) Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 7] is **GRANTED**; and

(3) The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 16th day of February, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge